IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Johnathan Robins,
 plaintiff,
v.
John Wetzel, et.al.,     #3:21-CV-1474
 defendant.

FILED
SCRANTON
MAY 02 2025
PER _____
DEPUTY CLERK

## PLAINTIFF'S RESPONSE TO DEFENDANT'S ANSWER WITH AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

   Plaintiff replies to Defendants' answer to Second Amended Complaint as they have raised issues to be addressed and there is a need to provide documentation to the Court to clarify the facts. Defendants are misinterpreting the details of events of Plaintiff's underlying case to present a false narrative remixing fact into fiction. Plaintiff is now providing trial transcripts, direct witness testimony, where all facts are supposed to flow from.
   Defendants are denying the validity of Plaintiff's marriage and attack it as a sham, as shown in Defendant's answer. Staff's disdain for Plaintiff's marriage is much more

1.

magnified in program than they've shown to the Court. Defendants also deny marriage is a religious tenet and says Plaintiff must prove it. Many religions recognize marriage as having spiritual significance;...therefore, the commitment of marriage may be an exercise of religious faith as well as an expression of personal dedication.... <u>Latta v. Otter</u>, 771 F3d 456, 2014 U.S. App. Lexis 19152 *36 (9th Cir).

    Defendants are arguing false facts and legal conclusions because they do not know marriage law. Plaintiff is married. see exhibit "A". In similar situations marriages have proved to be valid. In <u>in the interest of Miller</u>, 448 A2d 25, 301 Pa. Super. 511 (1982), a 14 yr old and a 36 yr old were married without parental consent. In <u>Forry v Forry</u>, 42 Pa. D & C. 2d 769, 1967 Pa. Dist. & Cnty. Dec. Lexis 132 (1967), two Pa. residents, one 15 and one 16 yrs old went to New York state, misrepresented their ages on the marriage license and were married without parental consent. In <u>L.J. v. V. J.</u>, 6 Pa. D & C. 4th 363, 1990 Pa. D. & C. Lexis 313 (1990), a 16 yr old and 36 yr old were married without parental consent. In <u>Teamsters Local 639 Employee's Pension Trust v. Johnson</u>, 1992 U.S. Dist. Lexis 11248 (Dist. of Columbia 1992), a

2.

17 yr old misrepresented their age to marry a 21 yr old. In <u>Holbert v. West</u>, 730 F. Supp. 50, 1990 U.S. Dist. Lexis 1362 (E.D. Kentucky 1990, 6th Cir), a 17 yr old misrepresented their age on a marriage license to get married without parental consent. In <u>U.S. v. Miles</u>, 2006 U.S. District Lexis 27226 (W.D. Oklahoma 2006, 10th Cir), a 14 yr old misrepresented age on license to marry a 43 yr old.

    A minor can be legally married without parental consent while misrepresenting their age on a marriage license. The marriage of a minor without the consent of a parent or guardian ... while prohibited, is not void. <u>Castor v U.S.</u>, 174 F2d 481, 482, 1949 U.S. App. Lexis 3653 (8th Cir 1949) ... where the statute is merely prohibitory, it has been generally held that a marriage contract without the required parental consent is not void because of the fact that such consent was not obtained; in other words, the consent of parents is not necessary to the validity of the contract. <u>Id</u> at 482-483. A marriage at common law was permissible if the man was at least fourteen and the woman at least twelve years of age; if these criteria are met, a court should not void the marriage even if statutory requirements, such as consent of a guardian if a party has not yet reached the

3.

age of majority, have not been met. Such a marriage may be voidable, but not void... Such a marriage is not subject to collateral attack. <u>Teamsters Local 639 Employer's Pension Trust v. Johnson</u>, 1992 U.S. Dist. Lexis 11248 * 2 (Dist. of Columbia). Inaccuracies in the marriage license as to the parties' ages or place of residence do not void the otherwise valid marriage, even if the inaccuracies were the result of intentional misrepresentations made in order to procure the marriage license fraudulently. <u>Id</u>. Statutory licensing requirements are not mandatory. A marriage performed without having met them is valid. <u>Id</u>. The law of both New York and Oklahoma appear to make clear that such misrepresentations of age, at most, make the marriage voidable rather than void. <u>Miles</u> 27226 *8. See 52 Am. Jur. 2d Marriage §14 (...the marriage of one over the age of seven, but under the age of consent -- 14 for male and 12 for a female -- is voidable ...the marriage of one between the age of consent and the age under which parental consent is required, without obtaining such consent, is valid...). <u>Mitchell v. Random House Inc</u>, 865 F2d 664 note 5; 1989 U.S. App. Lexis 1670 (S.D. Miss., 5th Cir 1989)

The marriage of a person shall be deemed

4.

voidable and subject to annulment where either party to the marriage was under 16 years of age. 23 Pa. C.S.A. § 3305 (a)(i). In all cases of marriage which are voidable either party to the marriage may seek and obtain an annulment of the marriage but, until a decree of annulment is obtained from a court of competent jurisdiction, the marriage shall be valid. The validity of a voidable marriage shall not be subject to attack or question by any person if it is subsequently confirmed by the parties to the marriage or if either party has died. 23 Pa. C.S.A. § 3305 (b). The distinction between a void and a voidable marriage is not merely a matter of semantics. The Divorce Code, like the common law, provides that a voidable marriage may be annuled only by "either party thereto" and is "valid and subsisting" "unless and until" challenged by one of them. In the interest of Miller, 448 A2d 25, 32. Missouri law distinguishes between "void" and "voidable" marriages. A void marriage is invalid from its inception because the parties lacked the capacity to contract under state law, or are related in a prohibited manner. See Mo. Ann. Stat. § 451.020. In contrast, a voidable marriage results from fraud, error, duress, or other imperfect consent. Everetts v. Apfel,

5.

214 F.3d 990, 992, 2000 U.S. App. Lexis 12162 (8th Cir 2000). A voidable marriage is valid until set aside by a decree of annulment. Id.

It is well established that the validity of a marriage contract is governed by the law of the place where the contract was made. Forry v. Forry, 42 Pa. D. & C. 2d 769, 1967 Pa. Dist. & Cnty. Dec. Lexis 132, citing Jewet v. Jewet, 196 Pa. Super 305, 175 A.2d 141 (1961). "Marriage in Pennsylvania is a civil contract by which a man and a woman take each other for husband and wife"..."The validity of a marriage is to be determined by the law of the place where it was celebrated; if valid there, it is valid everywhere." In re Estate of Rosmarin, 2017 Pa. Dist. & Cnty. Dec. Lexis 4456.

Defendants have created a false narrative in their filings and in group program. Defendants state that Plaintiff is not married, this is false. Defendants state Plaintiff only got married to complainant because she got pregnant, this is false because they discussed marriage when they started dating and complainant presented Plaintiff with a ring first. Defendants state marriage evidence wasn't presented to jury because it was irrelevant, this is false, the judge didn't present

6.

marriage evidence because the district attorney said he didn't want jury to see it. Defendants state that Plaintiff was convicted on actions before marriage, this is false, as complainant admitted under cross examination that she lied and after marriage she told the truth and Plaintiff still had sex with her; the jury only found him guilty because they did not know the law. Defendants state Plaintiff removes himself from program, this is false, as he is removed for not admitting to false narrative.

    Defendants refuse to acknowledge that before Plaintiffs' arrest in Philadelphia County, Plaintiff was going to the authorities in Delaware County to try to stop the welfare fraud by complainant's mother that helped to cause the relationship between Plaintiff and complainant. Plaintiff went to Delaware County welfare, met with Upper Darby Police, and went to Delaware County Family Court. See Exhibit "C" Notes of Testimony 3-11-2010, p 198-200; Exhibit "B" Delaware County hearing 12-31-2008, p 7, 10, 11, 12, 14, 15. Plaintiff had been living with Complainant as a family in Phila. and explained to authorities they were married; he was defending the integrity of his marriage as his

7.

religious beliefs require.

Defendants omit what actually caused the relationship to occur. Complainant, Ericka Johnson, was allowed to live and work outside of her mother's, Lucille Freeman, home as an adult, Freeman also allowed Ericka's younger sister, Terrica, to do the same so Freeman could get a welfare check for them and spend it on herself. After Plaintiff son was born, Freeman did the same fraud with his son. Plaintiff started an investigation at Delaware County Welfare which showed that Ericka, Terrica, and Plaintiffs' son was not living with Freeman even though she recieved checks for them. See Ex. "C" 3-11-2010 N.T p172, 245-251.

Ericka testified Plaintiff met her on an adult phone date line and first said he knew her age but under cross-examination she changed her testimony and said she lied to Plaintiff, his family, and his friends about her age. That she lied to get employment. She lied to her mother about who was the baby's father, and still had a false age on her Myspace page the day of the trial. She lied to hospital staff and Plaintiff had to correct the lie. And that she presented Plaintiff with a ring first. See 3-11-2010 Ex. "C"

8.

N.T. p. 49, 50, 53, 106-112, 115, 122-124, 142-145, 158, 165-169. Plaintiff's friend Tyra testified that Ericka lied to her about her age and only told Tyra her real age after the baby was born. See "D" 3-12-2010 p 8-10. Ericka talked about her physical abuse by Freeman saying it was discipline, and how Plaintiff made her happy and did all that she asked and how she wanted to be a family. See "C" 3-11-2010 p. 81, 114, 117, 118.

    Freeman testified that Ericka lied to other men about her age and if Ericka lied to get jobs she wasn't there with her. But when Freeman met one of Ericka's employers Freeman did not offer to tell Ericka's boss her real age. Freeman stated Ericka lied to her and presented another man as the baby's father. Freeman said she only met Plaintiff after the baby was born. See "C" 3-11-2010 p 174, 175, 180, 193, 216, 217.

    Plaintiff explained to trial judge he was presenting custody and welfare fraud evidence to show motive for witnesses to lie. Ericka stated she was worried about Plaintiff getting custody. Freeman said she was worried about Plaintiff getting her welfare check cut off. See "C" 3-11-2010 p 129, 140, 215, 216.

9.

   Plaintiff's religious believes require for him to care for his family. After marriage and Plaintiff found out Ericka's true age he sent her back to school as she was not going before. Plaintiff was the one who mainly cared for their child for about a year before he was arrested in February 2009 by Phila County. Ericka in February 2009, she mistakenly said 2008, after arrest she had to quit school and get two jobs to care for herself and their child, even though Freeman was receiving a check for both of them. See "C" 3-11-2010 p 44-46, 127, 162, 163, 222. As it was Plaintiff's religious duty to care for his family, while out on bail he paid Delaware County Family Court, Freeman v. Robins #2008-02157, over $6,000 to help his wife and son; the money went missing in the court system and never got to them.
   Defendants falsely claim Plaintiff was convicted on actions before marriage, even though Ericka and Freeman both testified Ericka lied to people. Plaintiff was convicted on actions after marriage because he testified that after he found out her real age he continued to sleep with his wife. See "D" 3-12-2010 p 56, 57. Having sex with a spouse

10.

under the age of sixteen is legal. Com. v. Stafford, 749 A2d 489, 499-500 (Pa. Super 2000)

    Plaintiff tried to introduce marriage certificate and marriage laws to the jury, he gave the Judge and District Attorney copies. At first the Judge said he would let the jury see marriage evidence the the D.A. said he did not want the jury to see it and only then did the Judge refused to present marriage evidence to jury; later the Judge falsely told the jury no one presented any marriage evidence. See "C" 3-11-2010 p.211, "D" 3-12-2010 p.78-81, 83-88, 137. The Judge allowed the jury, who are laymen, to decide on marriage law by what they thought or assumed what the law was without really knowing it; the Defendants in their answer to Amended Complaint show they don't know marriage law. Plaintiff was convicted of legal sexual acts with his wife.

    Defendants are misleading the Court about what participants in the sex program are required to admit to. Not only does SOP staff require Plaintiff to admit to the false narrative outlined in Answer to Amended Complaint, Defendants also require Plaintiff to slander and disavow his marriage as the Defendants have shown they do not acknowledge the existance of

11.

Plaintiffs' marriage. Defendants also require Plaintiff to admit to psychological traits stated in program, such as "levels of denial" and "thinking errors." See "E" Pages from Program booklet. If Plaintiff does not admit to these psychological traits and explain how these traits caused him to offend, staff will not allow Plaintiff to complete the program and see Parole; also they require Plaintiff to be honest in his answers. They even want Plaintiff to admit to Involuntary deviate sexual intercourse "by forcible compulsion" 18 Pa. C.S.A. § 3123(a)(1) even though trial Judge says it is falsely listed, that it is a "Clerical Error".

    Defendants say Plaintiff has no claim because his marital and religious rights are not infringed upon by any act of Defendants. Defendants have shown a disdain for Plaintiffs marriage even in their court filings, but out of the eyes of the Court such disdain is much more magnified. Defendants are requiring Plaintiff to violate his religious tenets of his marriage in order to exercise his right to be seen by Parole. Defendants can't claim they are respecting the rights of Plaintiffs' marriage and then in the same breathe say the marriage doesn't exist. Disrespecting Plaintiff's marital religious tenets by saying

12.

he must prove it, the marriage Defendants say does not exist. Defendants do not require others to verify their religious beliefs as it relates to their marriage and how does Defendants propose this to be done.

 Defendants are not acting in good faith. They require the inmate to put forward the narratives they want inmates to say, true or not, to be able to complete program and they hold the opportunity to see Parole over inmates heads in order to coerce them into admitting to statements they would not otherwise admit to. The age of consent in Pa. is 16, 18 Pa. C.S.A. §3122.1, but staff is trained to force participants in program to say they have mental problems if they believe having sex with someone under 18 doesn't cause them harm. See "F" sex offender treatment manual p 11-3, e(2). Plaintiff gave Defendants copies of marriage law, his marriage certificate, Delaware County family court transcripts, and trial transcripts to be forwarded to Sexual Offender Assessment Board. Program staff is supposed to share information with SOAB. Defendants threw away copies instead of forwarding them to SOAB or returning them to Plaintiff

13.

because it disproves Defendant's false narrative they are trying to coerce Plaintiff into admitting to. See "F" p 11-15, L.; "G" Inmate request form.

Defendants claim it is in the governments interest to force Plaintiff to admit to all of the false narratives they are trying to push on him. How? Are Defendants claiming they are trying to stop a reoccurrance of Plaintiff's case. That they are trying to stop some mother from forcing her daughter out of the home so she can use her daughter's welfare funds on herself. And for that minor daughter to have to lie about her age to survive and again meet Plaintiff on an adult phone date line. Is this what Defendants are saying. Or are Defendants going to create a fake boogeyman scenario saying they are trying to stop Plaintiff in the future from running onto school yards and snatching up children, even though he has not done it before.

Plaintiff's case needs to go to trial to have his claims decided on.

Respectfully Submitted

4-26-2025        *Johnathan Robins* (signature)

Johnathan Robins

14.

# AFFIDAVIT

I swear and affirm that the statements in the above Motion for Preliminary Injunction are true and correct to the best of my knowledge and belief and are subject to perjury under 18 Pa. C.S.A. §4904.

4-26-2025            *Johnathan Robins*

Johnathan Robins, pro se

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

4-26-2025                      *Johnathan Golund* (signature)

                               Johnathan Robins, pro se

## Proof of Service

I certify that I have served the foregoing to the person below on this date by first class mail:

Christine C. Einerson
15th Floor, Strawberry Square
Harrisburg, PA 17120


4-26-2025        *[signature]*

Johnathan Robins
JP9849
Box A
Bellefonte, Pa 16823

Johnathan Robins
JP9849
Box A
Bellefonte, Pa 16823

INMATE MAIL
PA DPT OF
CORRECTIONS

US POSTAGE $010.05

Legal Mail

USMS X-RAY

Middle District Court of Pa.
N. Washington Ave, Rm 101
Box 1148
Scranton, Pa 18501

RECEIVED
SCRANTON
MAY 02 2025
PER Am
DEPUTY CLERK