3:21cv1474

# EXHIBIT F

## Section 11 - Sex Offender Treatment (SOT)

**A. Standards, Guidelines, and Theoretical Orientation for the Assessment and Treatment of Adult Sex Offenders**

   1. Standards and Guidelines

      The Department's **Standards and Guidelines for the Assessment, Evaluation, and Treatment of Sex Offenders** are found in **Attachment 11-A**. Every provider of sex offender-specific treatment shall thoroughly familiarize himself/herself with these prior to facilitating treatment.

   2. Theoretical Orientation

      The **overarching** theoretical orientation of the Department is derived from the **modern research** in the field of Sex Offender Treatment (SOT). All program components and therapeutic strategies are evidence-based on a cognitive behavioral model **of treatment**.

**B. Risk/Need Assessment**

   1. Assessment Strategy

      a. An **Adjusted Actuarial Approach** shall be employed in evaluating sexual offenders. This strategy, involving first the use of a validated sex offender risk instrument that measures static or unchangeable risk factors shall be adjusted based on a **comprehensive** analysis of the inmate's dynamic risk factors.

      b. The risk assessment should be updated **if** an inmate's dynamic risk factors change, **even** minimally post-treatment and (if different) at time of parole review.

      c. When the inmate's reentry into the community is being considered, reports to the Pennsylvania Board of Probation and Parole (PBPP) should specify the offender's dynamic risk factors that are more acute in nature, **particularly** those that have a stronger **correlation** with re-offending and/or those that may change rapidly, such as **affective regulation or substance use disorder, etc.**, as these may be more amenable to observation by supervising officers and service providers. **These issues** may indicate that risk has increased such that offending is **potentially** more imminent than it was previously.

   2. Facility Responsibilities

      a. Permanent facilities **will assign a sex offender coordinator/designee who will be** responsible for identifying, **initial** tracking, and assessing all sexual offenders received. All facilities shall use the automated Unit Management System for recommending **an** SOT Program and maintain waiting lists. A trained SOT provider shall conduct specialized assessments of a sexual offender within **three** months of

11-1

DOC000001

ref: 4472409 pg 42 of 56 for JOHNATHAN ROBINS

his/her arrival at the facility, and subsequent to the assessment, ensure the appropriate program is placed on the offender's *DC-43, Correctional* Plan (*C*P).

b. Participation in sex offender-specific treatment shall be "minimum sentence-driven," with an offender closest to his/her minimum date taking priority over those further from his/her minimum sentence date. However, this is not to say that lifers and/or offenders with very long sentences shall not be afforded treatment. Whenever possible (when it would not take a slot needed for an offender two years within his/her minimum date), these offenders shall be considered for placement in treatment.

3. Informed Consent

Prior to initiating an interview for the purpose of initial risk assessment, the evaluator shall explain the nature, scope, and purpose of the interview to the inmate, emphasizing its importance in determining treatment needs. The **DC-484, Mental Health Informed Consent** form shall be completed in accordance with **Section 2** of this procedures manual.

4. Assessment protocol for an inmate offender with a current sex offense

a. Every offender currently incarcerated for a sex offense shall be assessed for level of risk within *three* months of arrival at the permanent facility.

b. For every male sexual offender, assessment shall include, but not be limited to, a case file review, and completion of the Static-99R. *For an explanation of how to score the Static-99R refer to* Static-99R Coding Rules, Revised 2016 **(Attachment 11-B)**. *Relative risk tables related to the Static-99R* can be found online at **www.Static99.org**).

   *The Static-99R will be scored electronically in DOCInfo under the Assessments tab. Refer to the Coding Form Preamble (Attachment 11-C) for a paper copy of the Static-99R.*

c. Unless the convicted sexual offender refuses *or exigent circumstances exist*, an individual interview shall also be part of the assessment process. During the interview, *the assessor may use* the DC-577, Sex Offender Data Collection Instrument **(Attachment 11-D)**. NOTE: *The use of the DC-577 may assist the assessor in structuring the interview.* Much of the information required for completion of the **DC-577** can be gleaned through the case file review, but can be verified and/or clarified in the individual interview. The same assessment process shall occur with every convicted female *or juvenile* sexual offender, excluding the completion of the Static-99*R* as this risk assessment tool has not been cross-validated with this population.

d. *Any inmate who refuses* to be interviewed for purposes of *sex offender* risk assessment shall *have documentation placed* in the **Inmate Cumulative Adjustment Record (ICAR)**. Upon refusal, the inmate shall be counseled as to the possible consequences of failure to participate in treatment, including the possibility of

11-2

being denied parole and of increasing his/her chances of re-offending upon return to the community. In cases where the inmate is appealing his/her case based upon claim of innocence and/or is in total denial of the crime(s) and refusing treatment, this shall also be documented using the **ICAR *and the DC-578, Sex Offender Program Evaluation (Attachment 11-E).***

e.   Once the Static-99***R* has** been completed, the treatment provider shall determine if the risk level gleaned from the Static-99***R*** is to be adjusted based upon the following static and dynamic risk factors that have been empirically ***validated*** to increased risk of sexual recidivism:

   (1)   indication that the offender is at high risk for general recidivism based on Level of Services Inventory - Revised (LSI-R) scores (if available);

   (2)   indication that the offender maintains attitudes that support sexual offending (articulates belief that ***individuals under the age of 18*** are not harmed by sexual activity with adults);

   (3)   indication that the offender has a primary sexual attraction to ***individuals under the age of 18*** and/or becomes sexually aroused by violence;

   (4)   indication that the inmate has engaged in a high degree of deviant sexual behavior ***or known paraphilia*** rather than appropriate sexual behavior;

   (5)   indication based on historical data or behavioral observations that the inmate has serious emotion management/impulsivity problems;

   (6)   indication that the inmate has significant history of conflict-ridden intimate relationships; and/or

   (7)   documented evidence of early onset sexual offending behavior.

f.   In the case of the female ***or juvenile*** sexual offender, the treatment provider shall determine the level of risk based upon the case file review, the individual interview, and the presence (or absence) of ***any of*** the above-cited dynamic risk variables.

g.   In making decisions to adjust the risk level obtained from the Static-99***R*** based upon identification of the above-cited static and dynamic risk factors, the following guidelines apply:

   (1)   Static-99***R*** scores translated into Low and Low-Moderate risk categories shall be adjusted upward (Moderate/High Risk) in cases where the presence of the dynamic risk factor deviant arousal is confidently identified. There should be documented evidence of a pattern of deviant behavior as evidenced by multiple offenses and/or victims over an extended period of time;

Issued: 11/19/2018
Effective: 11/26/2018

DOC000003

ef: 4472409 pg 44 of 56 for JOHNATHAN ROBINS

(2)  *a primary attraction to individuals under the age of 18 and/or sexually aroused by violence*; or

(3)  Static-99*R* scores translated into Low and Low-Moderate risk categories shall be adjusted upward (Moderate/High Risk) in cases where four or more of the risk factors (1) through (7) are confidently identified.

h.  In the event that the inmate does not self-refer (via written or verbal request) to treatment within a period of one year, the Corrections Counselor shall ensure that he/she is again counseled regarding the possible consequences of failure to participate in treatment at the time of his/her annual review. In the event that an inmate does self-refer for treatment, a risk assessment shall then be completed.

i.  The results of the sex offender assessment shall be summarized using the **DC-578**, which provides two levels of risk (Low *and* Moderate/High). A male offender assessed to be low risk shall be prescribed Low Intensity SOT Programming, while an offender assessed to be moderate or high risk shall be prescribed Moderate/High Intensity SOT Programming. *Prior to the individual's enrollment in group, the group facilitator will also complete the Program Enrollment Notification form. The original form will be forwarded to the inmate's counselor with a copy being given to the inmate and a copy will be placed in the individual's SOT file.* Assessment results (including copies of the completed Static-99*R* and the **DC-578**) *can be found on DOCNet*.

5.  Assessment Protocol for a Technical Parole Violator

When a male inmate *previously* convicted of a sexual offense (previously a successful completer of *Department of Corrections (DOC)* sex offender-specific treatment) fails on conditional release and is returned to prison as a *technical* parole violator, decisions about what level to return him to treatment shall be based in the following assessment protocol.

a.  *These cases shall be designated as Act 122 TPVs and will have an automatic release date. Designated staff will administer a Treatment Placement Screening (TPS). At the present time, all levels of risk as assessed on the TPS will be recommended for Parole Violator-Sex Offender Programming (PV-SOP). Programmatic recommendations shall be entered into the Transfer Petition using the Act 122 template provided by the Office of Population Management (OPM). All placement decisions (i.e. State Correctional Institution [SCI] or Contract County Jail [CCJ], and exact location) will be noted by OPM in the approved Transfer Petition.*

b.  *Upon reception, the receiving placement site will administer the PV-SOP program to these individuals.*

Issued: 11/19/2018
Effective: 11/26/2018

DOC000004

ref: 4472409 pg 45 of 56 for JOHNATHAN ROBINS

6. Assessment of a Convicted Parole Violator

   a. A Convicted Parole Violator, re-incarcerated due to a sexual *offense conviction* shall be evaluated as described in **Subsection B.4. above**, using the most recent sex offense as the index offense. Results of the evaluation, along with the programming recommendation, shall be summarized using the **DC-578**.

   b. Convicted Parole Violators, re-incarcerated due to *a* non-sexual *offense conviction* shall be evaluated *accordingly:*

      (1) *if the offender has lived sex offense free in the community for ten or more years from the date of his/her most recent release, then there will be a "No Evaluation or Treatment" recommendation;*

      (2) *if the offender has lived sex offense free in the community for less than ten years from the date of his/her most recent release and he/she has previously completed the PA DOC Sex Offender program, then there will be a "No Evaluation or Treatment" recommendation; and*

      (3) *if the offender has lived sex offense free in the community for less than ten years from the date of his/her most recent release and he/she has not completed the PA DOC Sex Offender program, then he/she will be recommended for a "Treatment Evaluation" as described in Subsection B.4. above (using the prior sex offense as the index offense, scoring the Static-99R retrospectively if not available in prior records, and adjusting, if indicated, as described in Subsection B.4. above) and subject to programming recommendations.*

7. Assessment of a male inmate referred for evaluation by the Corrections Counselor and/or the PBPP due to a prior sex offense *conviction* who was not on parole at the time of the current, *instant* offense.

   a. An inmate who was not on parole at the time he *was convicted of his instant offense, will be evaluated accordingly:*

      (1) *if the offender has lived sex offense free in the community for a total of ten or more years from the date of his most recent release, then there will be a "No Evaluation or Treatment" recommendation;*

      (2) *if the offender has previously completed the PA DOC Sex Offender program, then there will be a "No Evaluation or Treatment" recommendation; and*

      (3) *if the offender has lived sex offense free in the community for less than ten years from the date of his most recent release and he has not completed the PA DOC Sex Offender program, then he will be recommended for a "Treatment Evaluation" as described in Subsection B.4. above (using the*

Ref: 4472409 pg 46 of 56 for JOHNATHAN ROBINS

DOC000005

*prior sex offense as the index offense, scoring the Static-99R retrospectively if not available in prior records, and adjusting, if indicated, as described in Subsection B.4. above) and subject to programming recommendations.*

## C. Sex Offender Treatment (SOT) Programming

1. Standardized Treatment Model

   a. A program of sex offender-specific treatment is made available to every inmate convicted of a sexual offense, and in cases where specialized assessment indicates, treatment shall also be made available to an inmate who has a history of prior sexual **convictions**.

   b. Every facility that offers sex offender-specific treatment shall use the *"Responsible Living: A Sex Offender Treatment Program."* The program shall be implemented as using the "Group Only" format and the **designated** "Point System." **The process is described in Creating and Managing Groups in the Unit Management System (Attachment 11-F).**

   c. Initially, a denier shall be accepted into the program, but he/she shall be re-evaluated at intervals specified by the program, and ultimately terminated if satisfactory progress is not evidenced. **Use of the 60-day notice is required before termination/discharge from programming.**

   d. The order of presentation of the seven treatment phases **should follow the order as outlined in the program manual. Programming thus should begin with Module One, Responsibility Taking**. Programming shall be **delivered in a** standardized **fashion** with respect to content and, to a lesser extent, process. Any/all refinement and/or modification of programming must initially be approved through **Central Office Psychology**. If approved, any changes shall be incorporated into written procedure before implementation in the field.

   e. Point System - Program participants must accrue 85% of the total possible points in order to "graduate" from the program. (**NOTE:** The total number of possible points may vary as a function of several factors, including group size and the speed at which the facilitator(s) are able to work through the material.)

      (1) Using the "Group Only" format, each participant shall be able to accrue a total of six points per session, two for attendance, two for participation in the group session, and two for completion of the week's homework assignment.

      (2) A participant may be given a score of one rather than a score of two for participation and/or homework completion, if the group facilitator finds either or both marginal rather than satisfactory.

      (3) A participant can accrue ten points upon completion of the "Major Project"

11-6

associated with each phase of the program. In order to accrue all ten points, the quality of the participant's work shall be excellent. Nine points are awarded for good work, and eight for satisfactory work. If the facilitator does not find the participant's Major Project worthy of at least an "eight," the work shall not be accepted and the offender shall be advised of the reasons for rejection and performance expectations, and asked to resubmit the project after revisions have been completed.

(4)    A program participant shall be issued a completed Points Update form (located on page 96 of the "*Getting Started*" facilitator's manual) at the completion of each treatment phase. The treatment provider shall complete Points Updates along with the Therapist's Ratings on Treatment Goals form (located at the end of the facilitator's manual for each phase), which also shall be given to the program participant.

(5)    At this time, ***the treatment provider may have the*** program participant complete the Self Rating on Treatment Goals and Review of Progress on Treatment Goals forms (located at the end of the facilitator's manual for each phase), and shall submit these to the treatment provider. This exchange of assessments shall permit the program participant, as well as the therapist, opportunity to check the extent to which the program participant's ratings agree with the treatment provider's. The treatment provider shall ensure that copies of Points Update, Therapist's Ratings on Treatment Goals, Self Rating on Treatment Goals, and Review of Progress on Treatment Goals forms are maintained in the sex offender-specific treatment record.

f.    Modifications For Correctional Setting - Use of Phallometry and Polygraphy as outlined in *Responsible Living* shall be omitted due to unavailability of equipment and trained personnel. Aversive therapy techniques requiring use of ammonia shall also be omitted, and a written script shall be required instead of audiotapes for the Major Project (Covert Sensitization) in the Behavioral Techniques phase.

g.    Procedure for implementing completion of the Major Project for the Victim Empathy Phase of *Responsible Living: Victim Scrapbook* - completing this project requires that the inmate create a series of collages depicting victim impact. **Procedure for Implementing Victim Scrapbook Process (Attachment 11-G)** outlines a procedure for managing the materials necessary to complete the collage.

h.    A Moderate–High and High Risk offender, as assessed by the assessment protocol outlined in **Subsection B. above** shall receive all seven phases of *Responsible Living: A Sex Offender Treatment Program.*

i.    A Low and Low-Moderate Risk offender, as assessed by the assessment protocol outlined in **Subsection B. above** shall receive *Responsibility Taking, Sex Education and Relapse Prevention* phases.

j.    Special Populations - *Responsible Living: A Sex Offender Treatment Program* was

11-7

Ref: 4472409 pg 48 of 56 for JOHNATHAN ROBINS

*originally* designed for the male sexual offender and, therefore, programs for female sexual offenders may be modified *to address gender differences*. Treatment for a Special Needs inmate includes *Intellectual*/Developmental Disability, *Serious* Mental Illness, and/or physical disability. A *non-English speaking* sexual offender may also be modified accordingly, with modifications based upon field research and findings pertaining to best practices for these populations. *The institution is responsible for acquiring translation services in order to provide programming to non-English speaking individuals.* These programs shall be reviewed and approved through *Central Office Psychology*.

2. Treatment Variables

   Group therapy with sex offenders is viewed as the treatment modality of choice. Given skilled clinicians, the group therapy experience can be very *effective*.

   a. Group size - Group size shall be limited to not more than 15 participants.

   b. Group composition – *Group composition is primarily determined by minimum date. Groups are heterogeneous in make-up in regard to offense conviction, etc. Depending on institutional need, group composition may also be dictated by specialized populations as identified above.*

   c. Group process - Any ongoing group is in a continuous process of development. There have been several models outlining group development. A 4-stage model of group development summarizing the work of Corey (1995) can be found in *Four-Stage Model of Group Development* (Attachment 11-*H*).

   d. Getting Started - Documents explaining the **DC-580, Limits of Confidentiality (Attachment 11-*I*)** and **Conditions of Participation (Attachment 11-*J*)** should be thoroughly reviewed, signed by the inmate, and witnessed *by staff* prior to the inmate's involvement in programming.

   e. Levels of Treatment and Adding Group Participants

      (1) *Responsible Living: A Sex Offender Treatment Program*, as it is implemented for a sexual offender whose level of risk and need fall into moderate and high categories, consists of seven treatment phases. Once a treatment phase has been initiated, the group composition is "set" and no new group members shall be added. At the discretion of the treatment team, new members may be added when a new treatment phase is initiated. However, such decisions should be carefully considered and based upon the treatment team's assessment of the impact of these variables on the group and each participant. Close and accurate record keeping shall be very important in managing changes in group composition, as well as variations in the sequential ordering of individual participant's progression through the seven treatment modules.

      (2) *Responsible Living: A Sex Offender Treatment Program,* as it is implemented for

11-8

low risk offenders, shall generally be a "closed" group. That is, once the group composition is decided upon and the program is initiated, no new group members shall be added. The only exception to this shall be the case in which attrition has resulted in a Low Intensity group consisting of fewer than five program participants. In such case, this group may be joined with another Low Intensity group at the onset of a new treatment phase, provided the resulting larger group could ultimately complete the entire Low Intensity Program concurrently.

f. Frequency/Duration – *It is recommended that* group sessions be conducted *once* weekly for two consecutive hours. *This allows time between groups for the individual to process the information discussed in group and will allow time for them to complete assigned homework.* The total target time to complete the program as it is implemented for moderate and high risk/need level participants *shall be no less than 18 months and no more than 24 months.* The overall number of sessions required shall be determined by the rate of the group's progress through the required components. The total target time to complete the program as it is implemented for low risk offenders *shall be no less than* eight months *and no more than 12 months;* however, this also shall be a function of the group's rate of progress through the program material.

g. Facilitation - Groups may be co-facilitated depending upon availability of staff resources. Given availability of adequate resources, co-facilitation by male-female pairs is optimal and recommended.

D. *Support Groups*

*Individuals who have successfully completed treatment (i.e. either low intensity or moderate/high intensity) are eligible to also participate in voluntary support groups for sex offenders supervised by the DOC Psychology Staff. The support group will not be entered on the Correctional Plan and cumulative attendance will not be tracked. Participation in the support group will be strictly voluntary. This group should review SOP concepts and can be used to help individuals prepare for their parole interview. This group shall be offered to the inmate population at least one time per month. This SOP support group is also available to those individuals who have been evaluated and are awaiting participation in sex offender treatment. They will have the opportunity to familiarize themselves with the issues to be addressed in treatment. This will also afford them the opportunity to understand they are not alone in this difficult treatment process. Participation for this group will also be voluntary. Negative participation in the support group will be reviewed and documented by the SOP Coordinator, if needed, and result in the individual being removed from this support group.*

E. Delivery of Sex Offender Booster

1. *All individuals who have successfully completed the SOT Program (i.e. either low intensity or moderate/high intensity) will be recommended to also complete the*

11-9

*Sex Offender Treatment Booster (Attachment 11-K). This program recommendation should occur approximately four to six months prior to the individual seeing the parole board. The Sex Offender Treatment Booster is recommended for the individual regardless of whether it is mandated in the individual's paroling action or not.*

2. *It is expected that the Sex Offender Treatment Booster will be completed in four to six weeks, preferably in a group setting or with one on one treatment as needed. The expectation is that two sessions per week will be conducted to allow the individual ample opportunity to appropriately complete homework assignments and readdress issues related to offending. Individuals who completed Low Intensity Sex Offender program must complete the corresponding Booster segments (1, 2, 11, and 12) and individuals who completed the moderate/high intensity Sex Offender Program must complete all Booster segments. Individuals will need to pass the Booster with a score of 80% or better and will be required to attend all scheduled sessions. Further questions are addressed in Sex Offender Booster Frequently Asked Questions (Attachment 11-L).*

3. *Upon completion of the SOT Booster, the group facilitator will complete the Unit Management Program Evaluation Document. He/she will evaluate the individual via the Sex Offender Booster Assessment (Attachment 11-M) and include that score into the Unit Management program evaluation. Completion will also be documented in the ICAR.*

4. *SOT Booster failures will be managed according to the instructions found in the Sex Offender Booster Frequently Asked Questions.*

F. **Staff Qualifications and Minimum Training**

Qualifications *for facilitating the DOC standardized SOT Program*.

1. Credentialing and Supervision

   a. Staff who possess a graduate degree in the behavioral health, or social sciences.

   b. *All group facilitators must have completed the DOC Fundamentals of Sex Offender Treatment (FSOT) prior to delivering this program.*

   c. *Upon completing the DOC FSOT training, it is recommended that the newly trained staff co-facilitate at least one complete moderate/high treatment group.*

   d. *They must hold the job classification of Psychological Services Specialist (PSS), Psychological Services Associate (PSA), or Social Worker.*

   e. *Individuals with other levels of education experience and/or holding other job classifications may be approved individually by Central Office Psychology.*

11-10

Ref: 4472409 pg 51 of 56 for JOHNATHAN ROBINS

2. Training

    a. Education, experience, and training are the critical qualifications associated with the provision of SOT.

    b. Every provider **must** obtain at least **six** hours annually of continuing education in the field of **sex offender assessment and treatment**. Continuing education includes courses, conferences, workshops, and other training experiences including self-directed literature review. A provider may request out-service trainings through his/her facility administrators. A provider may also take advantage of trainings made available by the Sexual Offender Assessment Board (SOAB). These six-hour trainings are typically offered quarterly and free of charge.

3. Consultation and Professional Affiliations

    a. Providers, regardless of degree and years of experience in the field of sexual abuse, should supplement their education and professional experience with informal consultation with other providers of SOT in the Department.

    b. Providers should consider affiliations with other professional organizations, agencies, or groups involved in the assessment, treatment, and management of sexual abusers **such as: Association for the Treatment of Sexual Abusers (ATSA), Midatlantic Association for the Treatment of Sexual Abusers (MARATSA – a chapter of ATSA), Massachusetts Society for a World Free of Sexual Abuse by Youth (MASOC), and Massachusetts Association for the Treatment of Sexual Abuser.**

    c. Every provider should make a good faith effort to remain informed of all applicable statutory and regulatory requirements to warn, report, and notify the appropriate persons or entities of information learned during the course of providing clinical services. **Central Office Psychology** shall periodically provide information as it becomes available.

## G. Multidisciplinary Treatment and Management of the Sex Offender

The Department supports a multidisciplinary approach to the treatment and management of sex offenders. A variety of professionals including, but not limited to, Corrections Counselors, Psychologists, Psychiatrists, Certified Registered Nurse Practitioners – Psychiatric Services (PCRNPs), Unit Managers, and Corrections Officers **may** be involved in the treatment and**/or** management of sex offenders.

Every staff member involved in the treatment and management of sex offenders will become familiar with the cognitive distortions or "thinking errors" commonly used by sex offenders, as this may assist in therapeutic confrontations and/or monitoring the extent to which the offender is internalizing and practicing pro-social attitudes and behaviors addressed in the group treatment setting.

Issued: 11/19/2018
Effective: 11/26/2018

DOC000011

Ref: 4472409 pg 52 of 56 for JOHNATHAN ROBINS

1. Counselors

   The Corrections Counselor shall be the primary case manager for the sexual offender, ensuring he/she has been identified, has completed his/her risk/needs assessment, and has either been placed in programming subsequent to this assessment, or, if necessary, been placed on a waiting list for future involvement in programming. **The** Corrections Counselors **will also monitor the "Green Sheet" to determine if the Parole Board has made any modifications for SOT Program recommendations. These changes will be communicated to the institution's Sex Offender Coordinator via email.**

2. Psychologists

   The Licensed Psychology Manager (LPM)/**SOT Program Coordinator** shall coordinate and oversee the SOT in each facility. For sex offenders who are also placed on the Mental Health/**Intellectual Disability** (MH/**ID**) tracking roster(s), the psychology staff shall ensure that the inmate's Individual **Recovery** Plan (I**R**P) addresses sex offender assessment and treatment needs **that may fall beyond the scope of the standardized SOT Program.**

3. Psychiatrists/PCRNPs

   A Psychiatrist/PCRNP shall treat those sex offenders with co-existing Mental Health problems.

4. Unit Managers

   When managing a Residential Sex Offender Unit for sex offenders, the Unit Manager **may** become involved in the monitoring and, in some cases, tracking of progress of offenders on his/her housing unit.

5. Corrections Officers

   Particularly when posted on a Residential Sex Offender Unit for sex offenders, Corrections Officers can become involved in the tracking and monitoring of the offender's progress in treatment. Because an Officer tends to observe the inmates more than the treatment providers in settings outside of groups, he/she can be an invaluable source of information with regard to gauging the extent to which there is "transfer of learning" outside the group setting.

## H. Record Keeping

Record keeping is essential to maintaining documentation of offense-related data, risk assessments, program participation, progress in treatment, relapse prevention plans, and successful program completion. Good record keeping assists the provider in remaining organized and provides a handy resource for those working with large numbers of program participants. **All documentation must be completed by the individual who actually provided the services.**

11-12

Ref: 4472409 pg 53 of 56 for JOHNATHAN ROBINS

1. A file shall be developed for all inmate program participants. This file shall be a separate file developed and securely maintained by the treatment provider solely for maintenance of documents associated with sex offender-specific treatment. *This file shall contain the record of the individual's group attendance and their points updates. Other SOT specific documents are maintained electronically in DOCNet. There is no need to reproduce and maintain these in a hard copy file. All completed homework assignments and completed major projects will be retained by the group leader for review and scoring. They will then be returned as soon as possible to the group participant.*

2. *As stated above, the majority of record keeping is done electronically within DOCNet. An overview of those documents includes:*

   a. *DC-577 – this may be utilized by the assessor or treatment provider to assist in an initial structured interview;*

   b. *DC-578;*

      (1) *completed in conjunction with the Static-99R within 90 days of the individual's arrival at the programming institution;*

      (2) *evaluation is memorialized with a note in the ICAR. Documentation will note that the program evaluation was completed. The individual's attitude toward treatment will also be reflected;*

      (3) *the evaluator will modify the DC-43 by removing "Evaluation" and assigning a level of treatment; and*

      (4) *if the individual is refusing treatment, that will also be noted on the plan.*

   c. *Static-99R – will be completed in conjunction with the Sex Offender Program Evaluation within 90 days of the individual's arrival at the programming institution; and*

   d. *DC-579, Summary of Progress in Sex Offender Treatment (Attachment 11-N) – this document is to be completed on the following occasions and memorialized with a note in the ICAR. This ICAR note should briefly summarize the individual's progress in treatment. The group leader will also complete a Unit Management Program evaluation reflecting this same information.*

      (1) *At the successful completion of the group.*

      (2) *Prior to the individual's parole staffing with his/her unit team for inclusion in the parole staffing packet.*

      (3) *If the Parole Board would request an update at the time of his/her board hearing.*

11-13

Ref: 4472409 pg 54 of 56 for JOHNATHAN ROBINS

(4) *When the individual transfers to another institution prior to completion and at the time, an individual is terminated/discharged from the program.*

(5) *Upon successful completion, discharge, or failure.*

3. Upon the offender's release on parole or completion of the maximum sentence, any remaining documents in the file shall be destroyed.

I. **Assistor/Peer Programs**

Peers can be *an asset* in assisting other inmates who may be struggling with any number of programmatic/*treatment related* issues. Guidelines for selecting *peer assistors are as follows:*

1. Selection - The *SOT Program Coordinator* shall initially *identify and interview* potential assistors/peer group facilitator for inclusion in the program. Every **candidate for sex offender** assistor/peer *should* be entering the program on a voluntary basis, must have successfully completed the *appropriate* treatment program, *must* be misconduct-free for at least one year, and should be *recommended by a* consensus among *SOT providers.*

2. At facilities where there is a Residential Unit for sex offenders, the Unit Manager, *in conjunction with the* treatment provider, shall delineate assignments, times, and places where an assistor and peer groups can meet with *their* assigned inmate(s). The Unit Manager or treatment provider shall determine the number of assignments a particular assistor or peer group facilitator can manage, as well as the duration of his/her sessions. All mentoring sessions shall take place in a day room or conference room, which shall be intermittently monitored by correctional staff. The Unit Manager or treatment provider shall also be responsible for the management of inmate movement in those cases where the assistor is no longer housed in the Residential Sex Offender Unit or *in an institution where there is no Residential Unit.*

3. Treatment providers shall meet with the assistors and/or peer group leaders at least once monthly to process any concerns or problems, as well as any positive feelings associated with the mentoring process.

J. **Managing Program Participants who** *are Found Guilty of* **Misconduct(s)**

1. When the misconduct results in three consecutive missed sessions, the offender shall be terminated from his/her current program. In a case where imposed sanctions *may* allow *program participation, i.e. cell restriction,* the offender may *continue his/her participation* with his/her group.

2. *If terminated from programming, this will be documented using the Unit Management Program Evaluation form and the ICAR.*

Issued: 11/19/2018
Effective: 11/26/2018

DOC000014

Ref: 4472409 pg 55 of 56 for JOHNATHAN ROBINS

**K. Managing Inmates without a Sexual Conviction who Sexually Assault during Incarceration.**

1. *If this sexual assault results in a formal legal charge and criminal conviction in a Pennsylvania court of law, this individual will then be referred for assessment according to this policy.*

2. *Consistent with the Prison Rape Elimination Act (PREA), all prisons shall attempt to conduct a mental health evaluation of all known inmate-on-inmate abusers within 60 days of learning of such abuse history and offer treatment when deemed appropriate by mental health practitioners. (28 C.F.R. §115.83[h]) If the facility offers SOT, the facility shall consider whether to require the offending inmate to participate in such interventions as a condition of access to programming or other benefits. (28 C.F.R. §115.78[d]) Inmates who have been found to have engaged in sexual abuse without an accompanying criminal conviction, shall be evaluated for SOT and, if deemed appropriate, offered the opportunity to participate voluntarily in SOT.*

**L. Collaborating with the Sexual Offender Assessment Board (SOAB)**

Collaboration requires agencies to share resources and work together to enhance capacity toward attainment of a common goal. Because of the importance of collaboration in attaining goals of reduced recidivism and increased public safety, staff involved in the treatment and management of sexual offenders shall routinely exchange available pertinent information with the SOAB. Treatment staff shall apprise themselves of available SOAB evaluations, and shall be receptive to arranging times to answer the SOAB evaluators' questions upon request. Responses to questions may be communicated verbally or via available written reports and/or email. The SOAB will make their assessment reports available to treatment staff.

Issued: 11/19/2018
Effective: 11/26/2018

DOC000015

Ref: 4472409 pg 56 of 56 for JOHNATHAN ROBINS